UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN A. CABRERA,

       Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

       Respondents.

Case No. 2:26-cv-1490-KCD-DNF

/

## **ORDER**

Petitioner Juan A. Cabrera is a Cuban citizen with a final order of removal. (Doc. 9-4.)[1] Last year, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody. (Doc. 5.)

The background of the dispute is straightforward. Cabrera entered the United States in 1973 as a lawful permanent resident. He was incarcerated from 2014 through 2023 and thereafter transferred to ICE custody. On January 26, 2023, an order of removal was entered against him, but by that point, he had been released. ICE again detained him on October 26, 2025, and he has been in custody ever since.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period

"reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Cabrera satisfies the initial temporal requirement. ICE took him into custody seven months ago. Because the period for presumptively reasonable detention has long since expired, *Zadvydas*'s burden-shifting framework applies. Cabrera has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He states that he has received no indication that ICE will remove him to Cuba. (Doc. 5 at 7.) Coupled with the prior removal attempt and his Cuban citizenship, those facts are enough.

The burden thus shifts to the Government to rebut Cabrera's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. In fact, the Government

3

concedes it has no grounds to oppose the Petition, and the claim is ripe under *Zadvydas*. (Doc. 9 at 1-2, 4-5.)

This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Cabrera will be removed in the near future. (Doc. 9.) Instead, the Government submitted a declaration from Norris Q. Sealey, a deportation officer, that simply lays out the procedures that will be followed to effect Cabrera's removal to Mexico. (Doc. 9-7.) But ICE offers no evidence that Cabrera's acceptance into Mexico is likely. Indeed, not even a rough estimate of how long those procedures will take is offered. ICE must still notify Mexico of Cabrera's upcoming removal, and, if accepted, it will proceed. (*Id.* at 2-3.) Because ICE offers no concrete evidence that removal is likely in the near future, Cabrera must be released.

It is easy to see why this outcome might cause unease. Cabrera is a convicted sex offender. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for over fifty years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because

4

the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Cabrera will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent Cabrera's pro se petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Amended Petition for Writ of Habeas Corpus (Doc. 5) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Juan A. Cabrera from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 28, 2026.

Kyle C. Dudek
United States District Judge